[No. B172413. Second Dist., Div. Two. Mar. 21, 2005.]

In re Application of HENRY MOLZ, Publisher, for Establishment of the Los Angeles Enterprise as a Newspaper of General Circulation.
METROPOLITAN NEWS-ENTERPRISE, Petitioner and Respondent, v.
DAILY JOURNAL CORPORATION, Objector and Appellant.

COUNSEL

Post Kirby Noonan & Sweat, Michael L. Kirby, Theresa M. Brehl and Jonathan A. Boynton for Objector and Appellant.

Davis Wright Tremaine, Kelli L. Sager, Alonzo Wickers IV and Karen A. Henry for California Newspaper Publishers Association as Amicus Curiae on behalf of Objector and Appellant.

Roger M. Grace and Lisa Grace-Kellogg for Petitioner and Respondent.

OPINION

NOTT, J.— ▮ We are called upon to determine whether a newspaper of general circulation that was established prior to 1923 may, without publishing notice, obtain an adjudication that it is a newspaper of general circulation for every city incorporated since 1923 within the county in which the newspaper is established. We conclude that doing so is inconsistent with applicable statutes and contrary to public policy.

The impact of becoming a newspaper of general circulation for a city is significant. Certain legal notices, such as fictitious business name notices, may be published in any adjudicated newspaper in the county. (Bus. & Prof. Code, § 17917.) Others, however, must be published by a newspaper of general circulation for a particular city. For example, probate notices must be published in a newspaper of general circulation in the city in which the decedent resided. (Prob. Code, § 8121, subd. (b).) Foreclosure notices must

also be published in a newspaper of general circulation for the city where the real property is located. (Civ. Code, § 2924f, subd. (b)(1).)

## CONTENTIONS

The Daily Journal Corporation (Daily Journal) appeals from the denial of its motion to vacate an order deeming the Metropolitan News-Enterprise (Met News) a newspaper of general circulation for 40 cities incorporated within the County of Los Angeles since 1923. The Daily Journal contends the trial court erred in denying its motion to vacate based upon (1) the Met News's failure to show that it met the statutory qualifications to be adjudicated a newspaper of general circulation for the cities in question, and (2) its failure to publish the required notice. The Met News contends an order denying a motion to vacate is not appealable.

## LEGISLATIVE BACKGROUND

The legislative setting was described by our Supreme Court in *In re Norwalk Call* (1964) 62 Cal.2d 185 [41 Cal.Rptr. 666, 397 P.2d 426] (*Norwalk Call*). "The Government Code provides that whenever any official advertising, notice, resolution, order, or other matter is required by law to be published in a newspaper, such publication shall be made only in a 'newspaper of general circulation' (§ 6040), and that term is defined in section 6000 as a newspaper for the dissemination of news and intelligence of a general character which has a bona fide subscription list of paying subscribers and has been 'established, printed and published' at regular intervals for at least one year preceding publication in the state, county, or city where the publication is to be made. The word 'established' is defined as referring to a newspaper which has been in existence under a specified name for the whole of the one-year period. (§ 6002.) Until 1923 a newspaper could qualify as 'printed and published' within the meaning of the predecessor of section 6000 even though the physical act of printing was not performed in the place where the paper was to appear (*In re McDonald* (1921) 187 Cal. 158 [201 P. 110]), but in that year the Legislature adopted provisions, still in effect, defining 'printed' and 'published' in such manner that a newspaper could not be deemed one of general circulation for an area unless 50 per cent of the mechanical work of typesetting and impressing type on paper was completed there. (§§ 6003, 6004.) [¶] Also in 1923, however, the Legislature enacted the provision involved in this proceeding (§ 6006), declaring, 'Nothing in this chapter alters the standing of any newspaper which, prior to the passage of Chapter 258 of the Statutes of 1923, was an established newspaper of general circulation, irrespective of whether it was printed in the place where it was published for a period of one year as required.' In 1951 this section was amended to add the proviso, 'provided, however, that this section shall apply

only in the event that said newspaper has altered neither the county, nor the town, nor the city of its publication or printing, or both, since the effective date of this act.' The proviso was eliminated in 1961 by an amendment, thus restoring the statute to the form in which it was enacted in 1923." (*Norwalk Call, supra,* 62 Cal.2d at pp. 186–187, fn. omitted.)

*Norwalk Call* held that where a newspaper had before 1923 met the requirements to qualify as an established newspaper of general circulation for a township, the facts that the township subsequently was incorporated as a city and that the newspaper was not printed within the city did not terminate the newspaper's standing as of general circulation for the geographical area. (*Norwalk Call, supra,* 62 Cal.2d at p. 190.) The Met News relies upon this reasoning to support its position that because it could publish certain notices for the entire unincorporated area of Los Angeles County in 1923, it is entitled to continue to publish those notices throughout that geographic area after incorporation of a portion of the area.

## PROCEDURAL AND FACTUAL BACKGROUND

In 1952, Henry Molz, proprietor and publisher of the Los Angeles Enterprise newspaper, petitioned the superior court for a decree declaring the newspaper to be of general circulation for the City and County of Los Angeles and the State of California, as defined in section 6000 of the Government Code.[1] The decree issued. In October 1987, it was modified to reflect the change of the newspaper's name to Met News. The 1987 order states that the "original decree in this case recites the place of printing which, under Government Code Sec. 6006, is unnecessary in light of the pre-1923 founding date," and deleted the place of printing.

In April 2001, the Met News filed a second application for modification of the 1952 decree. This application was filed ex parte and without publication. It sought to further modify the judgment to include cities incorporated after 1923 within the County of Los Angeles. Judge Malcolm Mackey granted the application, and decreed the Met News a newspaper of general circulation, as defined in section 6000, for the Cities of Artesia, Baldwin Park, Bell, Bell Gardens, Bellflower, Calabasas, Carson, Cerritos, Commerce, Diamond Bar, Downey, Gardena, Hawaiian Gardens, Industry, La Canada-Flintridge, La Habra Heights, Lakewood, La Mirada, Lancaster, La Puente, Lawndale, Lomita, Los Angeles, Malibu, Norwalk, Palmdale, Paramount, Pico Rivera, Rancho Palos Verdes, Palos Verdes Estates, Rolling Hills, Rolling Hills Estates, Rosemead, San Dimas, Santa Fe Springs, Santa Clarita, Signal Hill, South El Monte, Temple City, Walnut, and West Hollywood, as well as the County of Los Angeles, and State of California.

---

[1] All statutory references are to the Government Code, unless otherwise indicated.

The Daily Journal asserts that it discovered the 2001 order in January 2003. In February 2003, the Daily Journal filed a motion to vacate the 2001 order. The motion states as grounds for relief that the Met News failed to publish notice as required by section 6021 and that a blanket adjudication for all cities in Los Angeles County incorporated after 1923 is impermissible. The Daily Journal disqualified Judge Mackey, pursuant to section 170.6 of the Code of Civil Procedure, and the case was reassigned to Judge Soussan G. Bruguera.

Judge Bruguera denied the motion to vacate the 2001 modification. This appeal followed. We permitted the California Newspaper Publishers Association (CNPA) to file a brief as amicus curiae in support of the Daily Journal.

## DISCUSSION

### I. *Appealability*

The Met News has moved for dismissal of the appeal, arguing that the order denying the motion to vacate is not appealable. We reject this contention.

■ A proceeding to adjudicate that a newspaper is a newspaper of general circulation is a special proceeding governed by section 6000 et seq. (See *In re Herman* (1920) 183 Cal. 153, 156 [191 P. 934].) Section 6026 provides: "An appeal may be taken to the supreme court from any final decision or judgment, or from any final order vacating, modifying or setting aside a decision or judgment previously entered."[2] The order appealed from here is an order *denying* a motion to vacate a judgment, not an order "vacating, modifying or setting aside a decision or judgment previously entered." *In re Hancock* (1949) 92 Cal.App.2d 481 [207 P.2d 61] was an appeal from an order denying a motion to modify a decree. The Court of Appeal held that although section 6026 does not directly provide for an appeal, a denial of a motion to modify such a decree is appealable under former section 963 of the Code of Civil Procedure (now Code Civ. Proc., § 904.1, subd. (a)(2)), which provided for an appeal from a final judgment in a special proceeding. (See *In re Hancock, supra*, at p. 484.) *In re Hancock* is on point, but the Met News urges us to repudiate it as incorrectly decided.

Former section 963 and current section 904.1 are both located in part 2 of the Code of Civil Procedure. The Met News points out that our Supreme

---

[2] The California Constitution confers upon the Court of Appeal jurisdiction over appeals from judgments on general circulation petitions. (*In re Perris City News* (2002) 96 Cal.App.4th 1194, 1199 [118 Cal.Rptr.2d 38].)

Court has held that the provisions of part 2 of the Code of Civil Procedure (§§ 307–1062.20) do not apply to special proceedings unless the statutes governing the special proceeding expressly incorporate those procedures. (*Carpenter v. Pacific Mut. L. Ins. Co.* (1939) 13 Cal.2d 306, 311 [89 P.2d 637] (*Carpenter*) [automatic stay provisions of sections 946 and 949 of the Code of Civil Procedure do not apply in a special proceeding].) The Government Code neither incorporates the procedures of the Code of Civil Procedure nor makes appealable an order denying a motion to vacate a modification of judgment.

■ Other decisions of our Supreme Court, however, established a right to appeal from final judgments in special proceedings based upon provisions contained in part 2. Early cases relied upon former section 963 of the Code of Civil Procedure, which expressly authorized an appeal from a final judgment in an action or special proceeding. (See *In re De La O* (1963) 59 Cal.2d 128, 156 [28 Cal.Rptr. 489, 378 P.2d 793] [civil commitment]; *People v. Bank of San Luis Obispo* (1907) 152 Cal. 261, 265–266 [92 P. 481] [bank insolvency proceeding]; *Morton v. Broderick* (1897) 118 Cal. 474, 485 [50 P. 644] [removal of a municipal body].) The reference to special proceedings was eliminated when Code of Civil Procedure section 963 was replaced by section 904.1 in 1968. Even after 1968, however, the Supreme Court held that "unless the statute creating the special proceeding prohibits an appeal, there is an appeal from a final judgment entered in a special proceeding." (*Knoll v. Davidson* (1974) 12 Cal.3d 335, 343 [116 Cal.Rptr. 97, 525 P.2d 1273] [appeal from an order directing the county registrar of voters to accept an application for a declaration of candidacy]; see 9 Witkin, Cal. Procedure (4th ed. 1997) § 97, p. 159 ["Former C.C.P. 963 expressly referred to a 'final judgment entered in an action, or special proceeding.' C.C.P. 904.1 refers only to 'a judgment' . . . but the meaning is the same: Unless the particular statute provides otherwise, final judgments in special proceedings are appealable"].) The order appealed from in the present special proceeding functions as a final judgment. We are bound to follow the rule of *Knoll v. Davidson, supra,* 12 Cal.3d 335.

■ Nor do we find that the Legislature's failure to expressly state that the denial of a motion pursuant to section 6024 is appealable evidences a legislative intent that the order not be appealable. (See *Westervelt v. McCullough* (1923) 64 Cal.App. 362 [221 P. 661] [statute stating that the grant of a special order after final judgment is appealable, does not make nonappealable an order denying such an order]; *Bond v. United Railroads* (1911) 159 Cal. 270 [113 P. 366] [same].) In general, "[t]he right of appeal is remedial and in doubtful cases the doubt should be resolved in favor of the right whenever substantial interests of a party are affected by a judgment." (*People v. Bank of San Luis Obispo, supra,* 152 Cal. at p. 264.) It "would hardly seem consistent to allow one of the parties the right of an appeal from

an adverse judgment and deny that same right to the other party." (*In re Hancock, supra*, 92 Cal.App.2d at p. 485.) ■ We hold that an order denying a motion to vacate pursuant to section 6024 is appealable.

Even were the order not appealable, we would treat the Daily Journal's appeal as a petition for writ relief. (See *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 698 [86 Cal.Rptr.2d 657].) The record contains all the elements prescribed by rule 56(c) of the California Rules of Court for an original mandate proceeding, and there are extraordinary circumstances justifying the exercise of the discretionary power: absent such treatment, there would be no appellate review of a question with significant public policy implications.

## II. *Publication*

The Daily Journal contends that the Met News was required to publish notice of its 2001 motion for modification, relying upon section 6021, which requires publication of a petition "for an order declaring it to be a newspaper of general circulation." Section 6022 provides that "[u]pon proof of the publication of the petition and notice, the court shall set the petition for hearing."

The Met News did not petition pursuant to section 6021, however. Instead, it filed its motion to modify under section 6024, which provides: "(1) The decision and judgment may be vacated, modified or set aside by the court on its own motion, or on the motion of any person, whether a party to the original proceeding or not upon: [¶] (a) A verified statement of facts being made to the court. [¶] (b) Ten days' notice to the petitioner. [¶] (c) A satisfactory showing made to the court that the newspaper has ceased to be a newspaper of general circulation. [¶] (2) The decision and judgment may be modified by the court on its own motion, or on the motion of any person interested, whether a party to the original proceeding or not, upon a similar verified statement and the same notice and a satisfactory showing made to the court that the newspaper had modified its name without any substantial change in its character or identity as a newspaper of general circulation."

■ Relief pursuant to section 6024 is available upon a showing either that "the newspaper had ceased to be a newspaper of general circulation" or that "the newspaper has modified its name without any substantial change in its character or identity as a newspaper of general circulation." (§ 6024, subds. (1)(c), (2).) The Met News made neither showing. Instead, it sought an order declaring it to be a newspaper of general circulation for certain cities in Los Angeles County. We therefore conclude that section 6024 did not afford a basis for such an order.

■ Section 6021 requires publication of notice where a petition seeks an order declaring a newspaper to be a newspaper of general circulation. Since the Met News sought such an order, and not a mere name change, section 6021 applied. This is a case where application of the plain meaning of the statute also achieves the object and purpose of the legislative scheme. (See *In re Covina Argus-Citizen* (1960) 177 Cal.App.2d 315, 318–319 [2 Cal.Rptr. 184] [statute should be given a construction that will reasonably achieve its object and purpose].) Unlike the matters covered under section 6024, for which notice to the petitioner is reasonable, an adjudication that a newspaper is established as a newspaper of general circulation for a city implicates the interests of both the public and competing newspapers. " 'The very purpose of requiring the publication of official notices is to inform the people concerning proceedings of a public nature for their general welfare.' " (*In re Tri-Valley Herald* (1985) 169 Cal.App.3d 865, 869 [215 Cal.Rptr. 529].) The public has an interest in limiting such publication to newspapers located in their community. Public interest also favors competition over monopolies. This interest, which is at the heart of our economic system, does not displace the interest in an opportunity for an adversary court proceeding where, as here, the controlling statute so provides.

■ We conclude that the Met News's 2001 motion for modification was in substance a petition for an order declaring it to be a newspaper of general circulation pursuant to section 6020. The Met News was therefore required to meet the publication requirements of section 6021. Absent notice, the trial court was without statutory authority to hear and grant such a motion. (§ 6022.)

## III. *The motion to vacate*

The Met News contends that the Daily Journal, having filed a motion to vacate pursuant to section 6024, was required to show changed circumstances, and that it failed to do so. The Met News also urges that any challenge to the 2001 order should have been made by appeal or by writ in this court.

■ Failure to provide notice, particularly in an in rem proceeding, results in a ruling that is subject to collateral attack. (See *Estate of Buckley* (1982) 132 Cal.App.3d 434, 450 [183 Cal.Rptr. 281] [failure to publish notice in a probate proceeding is grounds for collateral attack].) The Daily Journal challenged the 2001 order on the ground that the Met News had failed to publish notice. The record shows that it did so within a reasonable time of learning about the 2001 order. The motion was therefore proper as a collateral attack on the 2001 order. The Daily Journal was also not required to show changed circumstances, as required by section 6024. (See *In re Hancock, supra*, 92 Cal.App.2d at pp. 485–486.)

IV.  *Social policy*

Both parties and the amicus curiae have extensively briefed the many public policy implications of the dispute over adjudication of newspapers as newspapers of general circulation in the myriad cities of the county. The Daily Journal and CNPA emphasize the social policy that public notices appear in local papers, where interested persons have a reasonable opportunity to view them. They assert that a downtown newspaper, such as the Met News, cannot be effective in reaching the residents of outlying cities. They also urge that the Legislature intended to limit newspapers to adjudication for no more than one city.

Additional newspapers supported the Daily Journal's position below. While we do not know the number of newspapers poised to follow the Met News's lead, should it receive an affirmative outcome, the parties point to two superior court decisions in which petitioning newspapers sought to be adjudicated of general circulation for every city incorporated within a county since 1923 under the reasoning of *Norwalk Call, supra,* 62 Cal.2d 185. (In both cases the petitioning newspaper published notice.) In *In re the Petition of Sue Barry* (Super. Ct. Riverside County, 1995, No. 267864), the requested relief was granted. In *In the Matter of the Petition of Bob Balzar* (Super. Ct. San Bernardino County, 1996, No. SCV 31395), the relief was denied. (These trial court decisions, of course, have no precedential authority.)

The Met News asserts that the policy at issue is competition, and that CNPA is supporting those of its members with monopolies in the new municipalities. In addition, the Met News asserts that it was not awarded new adjudications for 40 additional cities by virtue of the 2001 order, but rather obtained a clarification that it was not to lose territory because of the post-1923 formation of cities within theretofore unincorporated areas of the county. Thus, it should be allowed to compete in those markets and by so doing obtain a price benefit for the public. The Met News also argues that in our mobile society, creditors of the residents of small outlying cities are more likely than not to live in a larger city within the county and work in a more commercial area.

The parties have not developed a factual record sufficient to address these issues. While they dispute the Met News's circulation, the record contains no evidence regarding whether the Met News has "a bona fide subscription list of paying subscribers, and has been established . . . and published at regular intervals" in the cities in issue. (§ 6000.) Interested parties, given the opportunity, may raise additional issues.

## V. *Remand*

We shall reverse the order appealed from, and direct the trial court to grant the motion to vacate the 2001 order. We do not reach the merits. These important issues all deserve a thorough hearing in the trial court.

### DISPOSITION

The motion to dismiss the appeal is denied. The order appealed from is reversed, with directions to grant the motion to vacate the 2001 order modifying the 1952 decree. The Met News shall bear the Daily Journal's costs of appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.

A petition for a rehearing was denied April 14, 2005, and respondent's petition for review by the Supreme Court was denied June 8, 2005.